In the MATTER OF THE MENTAL COMMITMENT of
KELLY M.:

DANE COUNTY, Petitioner-Respondent,

v.

KELLY M., Respondent-Appellant.

Court of Appeals

*No. 2010AP1486. Submitted on briefs November 1, 2010.
—Decided April 28, 2011.*

2011 WI App 69

(Also reported in 798 N.W.2d 697.)

720

721

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Ruth Westmont* of *Westmont Law Offices, S.C.*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the briefs of *Galen G. Strebe*, Assistant Corporation Counsel.

Before Vergeront, P.J., Higginbotham and Sherman, JJ.[1]

¶ 1. VERGERONT, P.J. Kelly M. appeals the order of commitment entered against her under WIS. STAT. § 51.20(1)(a)2.e., which addresses involuntary commitment based on an individual's inability by reason of mental illness to understand the advantages and disadvantages of medication or treatment for the mental illness. This standard for commitment is known as the "fifth standard." The circuit court ordered that Kelly be committed for six months and that psychotropic medication could be administered to her without her consent. We affirm the order.

¶ 2. We address three issues on appeal: (1) Is commitment under the fifth standard permissible for individuals who have dual diagnoses of mental illness and either drug dependency or developmental disability, or is a commitment under this standard available only for individuals with the single diagnosis of mental illness? (2) Is medication a "service" within the meaning of the community services exclusion in the fifth stan-

---

[1] This case was converted from a one-judge appeal to a three-judge appeal pursuant to WIS. STAT. § 809.41(3) (2009–10). All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

dard? (3) Is commitment under the fifth standard permissible for individuals who are already under an order for protective placement or services under WIS. STAT. ch. 55?[2]

¶ 3. We conclude as follows: (1) Commitment is available under the fifth standard for individuals who have dual diagnoses—that is, a diagnosis of mental illness and, in addition, a diagnosis of either drug dependency or developmental disability. (2) Medication is a "service" within the meaning of the community services exclusion of the fifth standard. Thus, Kelly did not come within this exclusion because of her failure to consistently take her medication. (3) Individuals who are already under an order for protective placement or services under WIS. STAT. ch. 55, as well as individuals who are not already under such an order but who are a proper subject of such an order, come within the ch. 55 exclusion in the fifth standard if there are placement or services available under ch. 55 that would be effective, as we describe more specifically in this opinion. Services under ch. 55 include the involuntary administration of medication under § 55.14.

## BACKGROUND

¶ 4. In March 2010, Dane County filed a petition for involuntary commitment of Kelly for treatment under WIS. STAT. § 51.20(1). Kelly had diagnoses of

---

[2] We have been informed that Kelly has recently died. We address these three issues because, although they are moot as to Kelly, they are significant issues that frequently arise and their resolution will provide guidance to circuit courts and litigants. *See Lenz v. L.E. Phillips Career Dev. Ctr.*, 167 Wis. 2d 53, 66–67, 482 N.W.2d 60 (1992). We do not address a fourth issue raised by Kelly—sufficiency of the evidence—because we conclude a resolution of this issue will not affect others.

developmental disability and bipolar affective disorder. At the time the petition was filed, she had a guardian and was subject to an order for protective placement and services under WIS. STAT. ch. 55.

¶ 5.　The petition alleged that Kelly suffered from a mental illness and was exhibiting self-destructive and dangerous behavior and met the requirements of the fifth standard for commitment. Probable cause was found and a final hearing was held.[3] The court heard testimony from Kelly's treating psychiatrist, another psychiatrist, and a psychologist. Both psychiatrists opined that Kelly met the standard for commitment under the fifth standard, while the psychologist testified he was unable to determine whether her mental illness satisfied the requirements for commitment. In addition, two persons who provided services to Kelly testified regarding incidents in which Kelly had acted dangerously and caused harm to herself or others.

¶ 6.　The circuit court found that Kelly was mentally ill; that because of her mental illness, she was unable to make an informed decision regarding medications; that there was a substantial probability, based on her history and recent acts, that she needed further treatment to prevent deterioration of her illness; that there were not reasonable provisions for her care in the community; and that there was a substantial probability that harm would come to Kelly or others if she was not treated. The court therefore ordered that Kelly be committed for six months to the custody of Dane County, with the maximum level of treatment being "outpatient with conditions." One of the conditions was

---

[3] In her initial brief, Kelly cites to the probable cause hearing transcript multiple times. This transcript is not in the record, and we do not consider it. *See Jenkins v. Sabourin,* 104 Wis. 2d 309, 313–14, 311 N.W.2d 600 (1981).

that she take all psychotropic medication prescribed for her. If she failed to comply with any condition, she could be taken into custody by law enforcement for inpatient treatment for not more than 30 days.

## DISCUSSION

¶ 7. On Kelly's appeal we address these issues: (1) Is commitment under the fifth standard permissible for individuals who have dual diagnoses of mental illness and either drug dependency or developmental disability, or is commitment under this standard available only for individuals with the single diagnosis of mental illness? (2) Is medication a "service" within the meaning of the community services exclusion in the fifth standard? (3) Is commitment under the fifth standard permissible for individuals who are already under an order for protective placement or services under Wis. Stat. ch. 55?

### I. Dual Diagnoses

¶ 8. The petition for involuntary commitment for treatment under Wis. Stat. ch. 51 must allege that the individual is *"mentally ill or, except as provided under subd. 2.e., drug dependent or developmentally disabled"* and is a proper subject for treatment, and meets the requirements for being dangerous under one of five standards. § 51.20(1)(a)1.-2. (emphasis added). Subdivision 2.e., the fifth standard, addresses dangerousness arising from an inability to understand the advantages and disadvantages of a particular medication or treatment. The fifth standard is for

> an individual, *other than an individual who is alleged to be drug dependent or developmentally disabled [who],*

725

after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and *because of mental illness,* evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment [and who would face the specified harm if left untreated.]

§ 51.20(1)(a)2.e. (emphasis added).[4]

---

[4] WISCONSIN. STAT. § 51.20(1)(a)2.e. provides in full:

For an individual, other than an individual who is alleged to be drug dependent or developmentally disabled, after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives *to* his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions. The probability of suffering severe mental, emotional, or physical harm is not substantial under this subd. 2.e. if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services or if the individual may be provided protective placement or protective services under ch. 55. Food, shelter, or other care that is

¶ 9. Kelly contends that the plain meaning of the italicized language in WIS. STAT. § 51.20(1)(a)1. and 2.e. is that the fifth standard applies only if a person has a single diagnosis of mental illness. In Kelly's view, the fifth standard plainly does not apply if the individual is both mentally ill and either drug dependent or developmentally disabled.

¶ 10. The County responds that, while the fifth standard requires that the person be mentally ill and be unable to understand the advantages and disadvantages of medication or treatment because of that mental illness, a person meeting these requirements is not excluded solely because the person is also either drug dependent or developmentally disabled.

██

¶ 11. A resolution of this issue requires us to interpret statutory language and apply it to the undisputed facts. This presents a question of law, which we review de novo. *State v. Tremaine Y.*, 2005 WI App 56, ¶ 9, 279 Wis. 2d 448, 694 N.W.2d 462. When we interpret statutory language, we apply its common meaning and we interpret it reasonably, so as to avoid unreasonable results. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 46, 271 Wis. 2d 633, 681 N.W.2d 110. We view the disputed language in the context of related statutes and we also consider the purpose of the statute as expressed in its text. *Id.*, ¶ 49.

---

provided to an individual who is substantially incapable of obtaining food, shelter, or other care for himself or herself by any person other than a treatment facility does not constitute reasonable provision for the individual's care or treatment in the community under this subd. 2.e. The individual's status as a minor does not automatically establish a substantial probability of suffering severe mental, emotional, or physical harm under this subd. 2. e.

¶ 12. We agree with the County and the circuit court. Reading WIS. STAT. § 51.20(1)(a)1. together with the fifth standard, the only reasonable meaning is that a petition under the fifth standard must allege that the person has a mental illness and that he or she is unable to understand, because of the mental illness, the advantages and disadvantages of treatment for his or her mental illness. It is unreasonable to read these provisions to preclude commitment for treatment under the fifth standard if a person with a mental illness meets the requirements of this standard, simply because the person also is drug dependent or developmentally disabled. The evident purpose of the fifth standard is to prevent serious harm from lack of treatment to persons who are mentally ill and, because of their mental illness, are unable to understand the advantages and disadvantages of treatment for their mental illness. We see no logical reason to exclude persons from this preventative alternative simply because they also have either a drug dependency or a developmental disability.

¶ 13. As a rationale for excluding persons with dual diagnoses from the fifth standard, Kelly contends that it is difficult to separate the effects of a mental illness from the effects of drug dependency and developmental disability. The result of this difficulty, according to Kelly, is that persons will be subject to commitment under the fifth standard who should not be. We are not persuaded by this rationale. The fifth standard plainly requires that the inability to either express or apply an understanding of the advantages and disadvantages of medication or treatment be "because of mental illness." WIS. STAT. § 51.20(1)(a)2.e. If the petitioner is not able to prove this by clear and convincing evidence, *see* § 51.20(13)(e), there will be no commit-

ment under this standard. The complexity of the task of applying this standard in particular dual diagnoses situations is not a reason to exclude all persons with dual diagnoses.

¶ 14. We conclude that the fifth standard may be used to involuntarily commit persons with dual diagnoses of mental illness and either drug dependency or developmental disability.

II. Medication as a Service under the Fifth Standard

¶ 15. The fifth standard requires that the individual

> evidence[] a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.

Wis. Stat. § 51.20(1)(a)2.e. The fifth standard further defines "substantial probability" of the requisite harm by identifying two situations in which there is *not* a substantial probability:

> The probability of suffering severe mental, emotional, or physical harm is not substantial under this subd. 2.e. [1] *if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail*

*himself or herself of these services or* [2] if the individual may be provided protective placement or protective services under ch. 55.

Wɪs. Sᴛᴀᴛ. § 51.20(1)(a)2.e. (emphasis added).

¶ 16. Kelly contends that the first exclusion (the community services exclusion) applies because there is care and treatment available for her in the community and she has "avail[ed] . . . herself of these services." She has acknowledged that she did not consistently take her medication, but, she contends, medication does not constitute a service within the meaning of this phrase. The County responds that medication is a service within the meaning of this phrase.

■

¶ 17. We agree with the County and conclude that the plain meaning of "these services" includes medication. "These services" refers back to "care or treatment . . . available in the community" in the preceding clause. Wɪs. Sᴛᴀᴛ. § 51.20(1)(a)2.e. Pursuant to § 51.01(17), "treatment" is defined to include "those . . . chemical [or] medical . . . techniques designed to bring about rehabilitation of a mentally ill . . . person."[5] There is no dispute that this definition includes the medications that Kelly was prescribed. These medications are therefore "services," and Kelly has acknowledged that she did not consistently "avail" herself of them.[6]

---

[5] Definitions in Wɪs. Sᴛᴀᴛ. § 51.01 apply "[a]s used in [ch. 51], except where otherwise expressly provided." § 51.01.

[6] The circuit court rejected Kelly's argument that she had availed herself of services within the community on a different ground. The fifth standard qualifies "reasonable provision for the individual's care or treatment . . . in the community" by providing that "[f]ood, shelter, or other care that is provided to an individual who is substantially incapable of obtaining food,

## III. Relationship Between the Fifth Standard and Chapter 55

¶ 18. As we have already noted, the fifth standard identifies two situations in which the "probability of suffering severe mental, emotional, or physical harm is not substantial." WIS. STAT. § 51.20(1)(a)2.e. In this section we address the second situation: "if the individual may be provided protective placement or protective services under ch. 55" (ch. 55 exclusion). *Id.*

¶ 19. Kelly contends this language means that, for any person eligible for or already subject to protective placement or services under WIS. STAT. ch. 55, there can never be a substantial probability of the requisite harm.[7] The result under her view is that, because she was already subject to an order for protective placement

shelter, or other care for himself or herself by any person other than a treatment facility does not constitute reasonable provision for the individual's care or treatment in the community under this subd. 2.e." WIS. STAT. § 51.20(1)(a)2.e. The circuit court concluded that food, shelter and other care was provided to Kelly by a person other than a treatment facility and Kelly was incapable of obtaining these for herself. Because neither party addresses the court's ruling on this point, we do not discuss it.

[7] In order to be the subject of an order for protective placement or services under WIS. STAT. ch. 55, an individual must either have been adjudicated incompetent or be a minor with developmental disabilities, § 55.06, and, in addition, must meet the criteria in § 55.08 for needing either protective placement or protective services. For both protective placement and protective services, the need must be the result of "developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities" and the absence of the placement or services must create a substantial risk of harm to the individual or others, although the definition of the risk of harm varies somewhat between placement and services. § 55.08(1)(c) & (2)(b).

and services under ch. 55, she cannot be committed under the fifth standard. Kelly points out that there is a procedure in § 55.14 for obtaining an order, with the guardian's consent, for the involuntary administration of psychotropic medication and this, she asserts, is the exclusive procedure applicable in her situation.[8]

¶ 20. The County responds that Kelly's proposed construction is unreasonable because it would mean that a person cannot be committed for treatment under the fifth standard even if the protective placement and services are not meeting the person's needs for medication or treatment. The County interprets the disputed language to mean that the probability of harm is not substantial under this exclusion only if the person's *existing* protective placement or services are effective to meet the person's needs. In other words, in the County's view it does not matter whether there are additional services available under WIS. STAT. ch. 55 that might minimize the harm because we look only at what is currently being provided under ch. 55. Thus, the County argues, it need not first seek a modification of Kelly's order for protective services to include involuntary administration of psychotropic medications under § 55.14. Instead, according to the County, because Kelly's order did not include this, the County could seek commitment under the fifth standard.

---

[8] Kelly raised this argument in the circuit court, but it was co-mingled with her argument on the community services exclusion. We therefore do not fault the court for not ruling on the meaning of the phrase in the fifth standard "if the individual may be provided protective placement or protective services under ch. 55." Because our review on the meaning of the statutory language is de novo and the parties have briefed this issue on appeal, we address it.

¶ 21. When we examine the ch. 55 exclusion in the context of the fifth standard, it is plain that this exclusion, like the community services exclusion, is intended to address a situation in which the probability of the requisite harm would be reduced so that it would not be substantial. The evident purpose as expressed in the text is to avoid commitment for treatment if it is reasonably probable that a person will make use of available services for treatment in the community or that placement or services available under WIS. STAT. ch. 55 will provide the needed treatment.

¶ 22. Kelly's proposed interpretation is inconsistent with this purpose and it is also unreasonable. It is unreasonable to preclude persons from being committed for treatment under the fifth standard simply because they are or could be the subject of a WIS. STAT. ch. 55 order even if the placement or services available under ch. 55 would not reduce the probability of "severe mental, emotional, or physical harm." § 51.20(1)(a)2.e.

¶ 23. In addition, Kelly's proposed interpretation ignores express statutory language allowing commitment under WIS. STAT. § 51.20 of persons subject to a ch. 55 order. WISCONSIN STAT. § 55.12(2) provides:

> An individual who is subject to an order for protective placement or protective services may be detained on an emergency basis under s. 51.15 or involuntarily committed under s. 51.20 . . . . No individual who is subject to an order for protective placement or services may be involuntarily transferred to, detained in, or committed to a treatment facility for care except under s. 51.15 or 51.20.

Thus, not only is commitment under § 51.20 available for persons subject to an order for protective placement

or services, but that section is the only provision under which such persons may be involuntarily committed. Nothing in this section—or any other we have discovered—indicates that commitment under the fifth standard of § 51.20 is singled out for different treatment.

¶ 24. For different reasons, the County's proposed interpretation is also inconsistent with plain statutory language and with the purpose of the fifth standard. First, the County reads "if the individual may be provided protective placement or protective services under ch. 55" to mean: "if the individual *is now being* provided protective placement or protective services *that are effective in addressing the harm*" (emphasized words added). However, the common meaning of "may be provided" in this context does not mean "is being provided" but instead means something that might happen in the future. *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1396 (1993) (applicable definition of "may" is "in some degree likely to . . .").[9] Thus, the individual need not already be provided with the placement or services.

¶ 25. Second, the County's proposed construction would allow the commitment of persons for treatment *even if* there are protective placements or services available under WIS. STAT. ch. 55 that would provide the needed care and treatment. As Kelly points out, an order for the involuntary administration of psychotropic medications, with consent of a guardian, is a protective service under ch. 55. §§ 55.12(9) & 55.14(2). Involuntary administration of psychotropic medication

---

[9] We may use a dictionary to establish the common meaning of a word. *Swatek v. County of Dane*, 192 Wis. 2d 47, 61, 531 N.W.2d 45 (1995).

under § 55.14(1)(a) means: placing the medication in the individual's food or drink "with knowledge that the individual protests receipt of the . . . medication"; forcible restraint in order to administer the medication; and requiring the individual to take the medication "as a condition of receiving privileges or benefits." If an order is issued under § 55.14 and one of these methods results in the successful administration of the medication, there is no need for commitment under the fifth standard for this purpose. It is not reasonable to read the fifth standard to permit commitment for involuntary administration of psychotropic medication even if an order could be obtained under § 55.14 and the order would make commitment unnecessary.

¶ 26. The County's arguments against use of the Wis. Stat. § 55.14 procedure are based on efficiency. The County argues that it should be able to choose the fifth standard instead of § 55.14 because the fifth standard is more efficient. The County points to the authorization under § 51.20(7)(d)2. for involuntary administration of psychotropic medication upon a finding of probable cause. The court must hold a probable cause hearing within seventy-two hours if the individual is detained and within a reasonable time if the individual is not detained. § 51.20(7)(a)-(b). The County contrasts this with the thirty-day time period within which petitions under § 55.14 must be heard. *See* § 55.14(7).

¶ 27. In making this argument, the County fails to consider the provisions for emergency protective services under Wis. Stat. § 55.13, which may include involuntary administration of psychotropic medication. § 55.14(10). Emergency protective services may be provided for up to seventy-two hours, and, upon a petition, a probable cause hearing must be held within seventy-two hours. § 55.13(1)-(2). Upon a finding of probable

735

cause, the court may order the emergency protective services to continue for up to sixty days pending the hearing on the petition. § 55.13(3). The only reasonable construction of these provisions in § 55.13, when read together with § 55.14 and particularly § 55.14(10), is that a person who is already subject to an order for protective placement or services may, if the requirements of § 55.13 are met, receive involuntary administration of psychotropic medication on an emergency basis until the hearing under § 55.14 is held. We therefore see no basis for the County's contention that proceeding under the fifth standard instead of § 55.14 ensures more immediate treatment in emergency situations.

¶ 28. The County also argues that the "cumbersome" enforcement mechanism in Wis. Stat. § 55.14(9) is time consuming for the court, the guardian, and others and could cause harmful delays in the administration of psychotropic medications. Under § 55.14(9), if the individual's noncompliance with a § 55.14 order makes it necessary to transport the individual to a facility for forcible restraint for administration of the medication, the county, with the guardian's signature, may obtain a court order authorizing this. In contrast, under the approach the County took in this case, the County obtained an order that permitted it to take Kelly into custody for inpatient treatment for thirty days if she did not take the medication as ordered.

¶ 29. We address the County's argument in three ways. First, the County appears to assume that, if an individual is under a Wis. Stat. § 55.14 order and is not compliant with it, the only option is an order under § 55.14(9) for transportation to a facility for administration of the medication. We disagree with this assumption. Section 55.14(9) is limited in scope and may

736

not be adequate to effectively provide the involuntary administration of medication that an individual needs. For example, § 55.14(9) does not authorize transfer to a treatment facility; this may be done only under ch. 51. *See* § 55.12(2). Putting this in terms of the ch. 55 exclusion in the fifth standard: if a § 55.14 order has not been effective in providing involuntary administration of medication or it is not reasonably probable that such an order will be, then it does not come within the exclusion. The reason is that the exclusion, as we have already explained, is intended only for a service that reduces or will reduce the probability of the requisite harm to less than a substantial probability. If an order under § 55.14, including § 55.14(9), does not meet this criterion, the exclusion does not apply and the fifth standard is available, assuming all other requirements are met.

¶ 30. Second, to the extent the County means that avoiding the Wis. Stat. § 55.14 route is more efficient because it may turn out not to be effective and commitment under the fifth standard would then be necessary, we reject this argument for the same reason we have already rejected the County's construction of the ch. 55 exclusion in the fifth standard. The legislature has decided that commitment under the fifth standard is not available if ch. 55 placement or services will reduce the probability of requisite harm to less than a substantial probability. If this is the case, the County does not have the option of avoiding this route on the ground of efficiency.

¶ 31. Third, to the extent the County suggests that individuals may be without necessary medication in emergency situations, we have already explained that involuntary administration of medication can be

an emergency service under Wis. Stat. § 55.14(10). It is also available on an emergency basis under § 51.15(8).

¶ 32. In summary, we conclude that the ch. 55 exclusion in the fifth standard includes an individual who is already subject to an order for protective placement or services, if there is another placement or additional services available under Wis. Stat. ch. 55 that would be effective in reducing the probability of the requisite harm to less than a substantial probability. This exclusion also may apply to an individual who is not yet subject to a ch. 55 order but who is eligible for one. We further conclude that involuntary administration of medication under § 55.14 may be one of the additional services that would satisfy this exclusion, if the guardian consents and depending on the individual's circumstances.

¶ 33. In this case, the circuit court did not rule on the scope of the ch. 55 exclusion, *see* footnote 8, and did not make findings on whether an order under Wis. Stat. § 55.14 would be effective for Kelly. In addition, the evidence does not show whether Kelly's guardian would have consented. We would ordinarily remand for further proceedings on this issue. However, because we have been informed that Kelly has recently died, *see* footnote 2, further proceedings on this issue are unnecessary.

## CONCLUSION

¶ 34. Our resolution of the first two issues supports an affirmance of the court's order. We have concluded that a person may be committed for treatment under the fifth standard, even though he or she has a diagnosis of drug dependency or developmental disability in addition to a diagnosis of mental illness,

738

and that medication is a "service" within the community services exception of the fifth standard. On the third issue, we have interpreted the ch. 55 exclusion in the fifth standard. However, without further proceedings on the application of this interpretation to Kelly, there is no basis for reversing the court's order on this ground. Accordingly, we affirm.

*By the Court.*—Order affirmed.