COURT OF APPEALS
DECISION
DATED AND FILED

March 24, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP2049-FT**

**STATE OF WISCONSIN**

Cir. Ct. No. 2018ME91

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF J.L.H.:

FOND DU LAC COUNTY,

    PETITIONER-RESPONDENT,

  V.

J.L.H.,

    RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Fond du Lac County: PETER L. GRIMM, Judge. *Reversed and cause remanded.*

¶1 GUNDRUM, J.[1] J.L.H. appeals from an order of the circuit court extending her involuntary mental health commitment and challenges an order for involuntary medication and treatment. She argues that Fond du Lac County failed to establish that she is dangerous and thus that the circuit court erred in ordering her recommitment and the involuntary administration of medication and treatment. Based upon the record before us, we must agree.

## Background

¶2 J.L.H., age 51, suffers from cognitive and physical deficits related to a stroke she experienced at age sixteen and is also diagnosed with organic delusional disorder including manic and psychotic disorders. She has received mental health treatment for decades and is under a protective placement order,[2] living in a group home, and under an outpatient commitment order.

¶3 In April 2020, the County filed a petition for an extension of J.L.H.'s mental health commitment. Following an evidentiary hearing in May 2020, the circuit court entered orders extending the commitment and authorizing the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The County asserts in its briefing on appeal that J.L.H. is *not* under a protective placement order, but it provides no record citations in support of this assertion. The circuit court found that J.L.H. is "in placement and she has a guardianship and protective placement." We conclude that this finding is not clearly erroneous as it is supported by the uncontroverted testimony of the *County's* only witness, Dr. Natalie Krah, who agreed in her cross-examination testimony that J.L.H. "is currently protectively placed at" a group home facility. Furthermore, in Dr. Krah's report, which the County submitted with its "Application for Extension of Commitment," Dr. Krah states that J.L.H. "is under guardianship and has a protective placement order." Thus, for purposes of this appeal, we must treat it as fact that J.L.H. is under a protective placement order.

involuntary administration of medication and treatment for one year. J.L.H. appeals.[3]

## *Discussion*

¶4　J.L.H. contends that the circuit court erred in extending her mental health commitment and the involuntary administration of medication and treatment to her. For the following reasons, we agree.

¶5　As relevant to this appeal, an individual is a proper subject for involuntary commitment for treatment under WIS. STAT. § 51.20(1) if he or she is (1) "mentally ill or, except as provided under subd. 2.e., drug dependent or developmentally disabled," (2) "is a proper subject for treatment," and (3) "is dangerous because he or she does any of the following [subd. 2.a.-d. or]:"

> e. For an individual, other than an individual who is alleged to be drug dependent or developmentally disabled, after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; *and evidences* a substantial probability, as demonstrated by both the individual's treatment history and his or her *recent acts or omissions*, that the individual needs care or treatment to prevent further disability or deterioration and *a substantial probability that he or she will,* if left untreated, lack services necessary for his or her health or safety and *suffer severe mental, emotional, or physical harm* that will result in the loss of the individual's ability to function

---

[3] Although J.L.H. challenges the circuit court order for involuntary medicine and treatment, she does not address that order separately.

3

independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions. *The probability of suffering severe mental, emotional, or physical harm is not substantial under this subd. 2. e.* if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services or *if the individual may be provided protective placement or protective services under ch. 55.*

Sec. 51.20(1)(a)1., 2.a.-e. (emphasis added).

¶6　For a *recommitment*, as in this case, the County must prove these same three elements of WIS. STAT. § 51.20(1) by clear and convincing evidence, but there is "an additional manner of proving dangerousness provided by WIS. STAT. § 51.20(1)(am)." *See **Langlade County v. D.J.W.**,* 2020 WI 41, ¶32, 391 Wis. 2d 231, 942 N.W.2d 277. This is "[b]ecause an individual's behavior might change while receiving treatment" and the individual "may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *Id.*, ¶¶32-33 (citation omitted). WIS. STAT. § 51.20(1)(am) states in relevant part:

> [I]f the individual has been the subject of outpatient treatment for mental illness, developmental disability, or drug dependency immediately prior to commencement of the proceedings as a result of a commitment ordered by a court under this section … the requirement[] of a … pattern of *recent acts or omissions* under par. (a) 2. … e. … may be *satisfied* by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.

(Emphasis added.)

¶7　"[D]angerousness," however, "remains an element to be proven to support both the initial commitment and any extension." *D.J.W.*, 391 Wis. 2d

4

231, ¶33 (citation omitted). "The evidentiary pathway set forth by [para.] (1)(am) ... does not change the elements or quantum of proof required." ***D.J.W.***, 391 Wis. 2d 231, ¶34 (citation omitted). "Para. (1)(am) … mandates that circuit courts ground their conclusions in the subdivision paragraphs of subd. 2.," and courts must "provide specific factual findings with reference to the subdivision paragraph of [WIS. STAT.] § 51.20(1)(a)2. on which the recommitment is based." ***D.J.W.***, 391 Wis. 2d 231, ¶¶41, 43.

¶8      As the plain language of WIS. STAT. § 51.20(1)(am) indicates and as relevant to this case, this subdivision only provides for a substitute method of "satisf[ying]" the subd. (1)(a)2.e. requirement of "recent acts or omissions"; it does not undermine other aspects of (1)(a)2.e. Thus, the County still needed to prove the following (1)(a)2.e. requirement:

> a substantial probability … that the individual needs care or treatment to prevent further disability or deterioration *and a substantial probability that he or she will*, if left untreated, lack services necessary for his or her health or safety and *suffer severe mental, emotional, or physical harm* that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.

Sec. 51.20(1)(a)2.e. (emphasis added). Because of this, the circuit court's finding in this case that "the [§ 51.20(1)](am) standard is also satisfied by the evidence," does nothing to undermine the effect of this other (1)(a)2.e. provision: "The *probability* of suffering severe mental, emotional, or physical harm *is not substantial* under this subd. 2.e. … if the individual may be provided *protective placement* or protective services under [WIS. STAT.] ch. 55." (Emphasis added.)

¶9      In this case, the circuit court found—and such finding is supported by the testimony and report of the County's only witness, Dr. Krah—that J.L.H. is

(or at least at the time of the hearing "was") "in placement and she has a guardianship and protective placement." Based upon the plain language of WIS. STAT. § 51.20(1)(a)2.e., it might initially appear that this finding alone means the County failed to meet its burden to establish dangerousness; however, we are bound by our prior holding in *Dane County v. Kelly M.*, 2011 WI App 69, 333 Wis. 2d 719, 798 N.W.2d 697, upon which J.L.H. relies heavily and which compels us in a different direction.

¶10 In *Kelly M.*, "Dane County filed a petition for involuntary commitment of Kelly for treatment under WIS. STAT. § 51.20(1)." *Id.*, ¶4. Kelly had "diagnoses of developmental disability and bipolar affective disorder" and "[a]t the time the petition was filed, she had a guardian and was subject to an order for protective placement and services under WIS. STAT. ch. 55." *Id.* Among other findings, the circuit court found "that there was a substantial probability that harm would come to Kelly or others if she was not treated." *Id.*, ¶6. The court ordered an outpatient commitment under § 51.20(1)(a)2.e. with a condition that Kelly "take all psychotropic medication prescribed for her." *Id.*

¶11 On appeal, we specifically examined the relationship between WIS. STAT. § 51.20(1)(a)2.e. and WIS. STAT. ch. 55. We noted that subd. 2.e. provides that in the "situation" where "the individual may be provided protective placement or protective services under ch. 55"—the "ch. 55 exclusion"—"the 'probability of suffering severe mental, emotional, or physical harm is *not substantial*.'" *Kelly M.*, 333 Wis. 2d 719, ¶18 (emphasis added). We held that this exclusion "is intended to address a situation in which the probability of the requisite harm would be reduced so that it would not be substantial." *Id.*, ¶21. "The evident purpose as expressed in the text," we continued, "is to avoid commitment for

treatment if it is reasonably probable … that placement or services available under WIS. STAT. ch. 55 will provide the needed treatment." ***Id.***

¶12     We further stated that

> an order for the involuntary administration of psychotropic medications, with consent of a guardian, is a protective service under [WIS. STAT.] ch. 55. §§ 55.12(9) & 55.14(2). Involuntary administration of psychotropic medication under § 55.14(1)(a) means:  placing the medication in the individual's food or drink "with knowledge that the individual protests receipt of the ... medication"; forcible restraint in order to administer the medication; and requiring the individual to take the medication "as a condition of receiving privileges or benefits." *If an order is issued under § 55.14 and one of these methods results in the successful administration of the medication, there is no need for commitment under the fifth standard for this purpose.  It is not reasonable to read the fifth standard to permit commitment for involuntary administration of psychotropic medication even if an order could be obtained under § 55.14 and the order would make commitment unnecessary.*

***Kelly M.***, 333 Wis. 2d 719, ¶25 (emphasis added).  We added:

> if a § 55.14 order has not been effective in providing involuntary administration of medication or it is not reasonably probable that such an order will be, then it does not come within the [ch. 55] exclusion.  The reason is that the exclusion, as we have already explained, is intended only for a service that reduces or will reduce the probability of the requisite harm to less than a substantial probability.  If an order under § 55.14, including § 55.14(9), does not meet this criterion, the exclusion does not apply and the [subd. 2.e.] fifth standard is available, assuming all other requirements are met.

***Kelly M.***, 333 Wis. 2d 719, ¶29.  We concluded:

> The legislature has decided that commitment under the fifth standard is *not available* if ch. 55 placement or services will reduce the probability of requisite harm to less than a substantial probability.  If this is the case, the County *does not have the option of avoiding this route* on the ground of efficiency.

*Kelly M.*, 333 Wis. 2d 719, ¶30 (emphasis added).

¶13    We also determined in *Kelly M.* that, considering the WIS. STAT. § 51.20(1)(a)2.e. "may be provided" language in "[t]he probability of suffering severe mental, emotional, or physical harm is not substantial under this subd. 2.e. … if the individual *may be provided* protective placement or protective services under [WIS. STAT.] ch. 55," the ch. 55 exclusion may apply not only to an individual under a ch. 55 protective placement or protective services order but also "to an individual who is not yet subject to a ch. 55 order *but who is eligible for one*." *Kelly M.*, 333 Wis. 2d 719, ¶32 (emphasis added).  Thus, as relevant to this case, even if J.L.H. was not under a ch. 55 protective placement at the time of the hearing in this case, if she was "eligible for one," the holding of *Kelly M.* still would apply to her case.  *See id.*

¶14    We then stated in *Kelly M.* that we would have remanded the case back to the circuit court to "rule on the scope of the [WIS. STAT.] ch. 55 exclusion," "make findings on whether an order under WIS. STAT. § 55.14 would be effective for Kelly," and determine "whether Kelly's guardian would have consented," however, Kelly had died, so further proceedings on these matters were unnecessary.  *Kelly M.*, 333 Wis. 2d 719, ¶33.

¶15    In the case now before us, the court found that J.L.H. was under a WIS. STAT. ch. 55 placement, but made no findings consistent with *Kelly M.* related to whether the ch. 55 exclusion applies to her case.  Consistent with the procedure we indicated as appropriate in *Kelly M.*, we reverse and remand this case back to the circuit court for further proceedings consistent with this decision and *Kelly M.*

*By the Court.*—Order reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.