COURT OF APPEALS
DECISION
DATED AND FILED

October 5, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP292**

STATE OF WISCONSIN

Cir. Ct. No. 2021ME167

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF L.J.E.:

WAUKESHA COUNTY,

    PETITIONER-RESPONDENT,

  V.

L.J.E.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Waukesha County: MARIA S. LAZAR, Judge. *Affirmed.*

¶1 NEUBAUER, J.[1] Evans[2] appeals an order of involuntary commitment and an order for involuntary medication and treatment entered by the circuit court following an evidentiary hearing at which it determined that Waukesha County had proven grounds for commitment under the "fifth standard" for dangerousness set forth in WIS. STAT. § 51.20(1)(a)2.e. Evans contends that the County did not establish grounds to involuntarily commit her because it failed to prove that her risk of harm could not adequately be addressed through protective placement or protective services under WIS. STAT. ch. 55. Because Evans did not meet the statutory criteria to be eligible for protective placement or services when the court found her to be dangerous, we reject her challenge and affirm.

## BACKGROUND

¶2 A brief discussion of the legal framework governing involuntary commitment in Wisconsin will focus and contextualize our discussion of the facts of this case. Wisconsin law permits a person to be committed involuntarily if the petitioner proves by clear and convincing evidence that the person is: "(1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others." *Langlade County v. D.J.W.*, 2020 WI 41, ¶29, 391 Wis. 2d 231, 942 N.W.2d 277. Evans does not challenge the County's proof on the first two elements of this three-part test. Her appeal focuses on whether the County met its burden of proof with respect to the third element—dangerousness.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] We follow the parties' lead and refer to the Appellant by a pseudonym to protect her dignity and privacy rights. *See* WIS. STAT. RULE 809.86.

¶3     "WIS[CONSIN] STAT. § 51.20(1)(a)2. provides five different means of demonstrating that a person is 'dangerous.'" ***D.J.W.***, 391 Wis. 2d 231, ¶30 (citation omitted).  Here, the County sought to commit Evans pursuant to the fifth standard for dangerousness, which is codified in § 51.20(1)(a)2.e.   The fifth standard sets forth a lengthy rule for determining when an individual "who is [not] alleged to be drug dependent or developmentally disabled" is considered "dangerous."  Sec. 51.20(1)(a)2.e.  For an individual to be found dangerous under the fifth standard, a circuit court must find that:

> after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, [the individual] evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions.

***Id.***

¶4     The fifth standard also contains two "exclusions" in which the probability that an individual will suffer "severe mental, emotional, or physical harm" is not "substantial" and thus does not justify involuntary commitment: (1) "if reasonable provision for the individual's care or treatment is available in the community and there is a reasonable probability that the individual will avail

himself or herself of these services"; or (2) "if the individual may be provided protective placement or protective services under [WIS. STAT.] ch. 55." WIS. STAT. § 51.20(1)(a)2.e. With this statutory framework in mind, we turn to the evidence presented at the final hearing on the County's commitment petition.

¶5 The County called four witnesses to testify at the final hearing. The first was Anthony Zitzelsberger, a friend of Evans with whom she had been living for a couple of years. Zitzelsberger testified that Evans has not worked since she began living with him and only contributes about one hundred dollars per month towards household expenses. He also testified that Evans receives funds from a divorce settlement but has been unable to access them because the debit card on which they were loaded expired and she "won't let herself renew it" because of "the way her mind is working at this point." Similarly, he testified that Evans "couldn't get herself" to complete the paperwork to obtain a post office box or enroll in social security. Zitzelsberger indicated that Evans could continue to live with him if she obtained psychiatric help and expressed concern that she might end up "[o]n the street" without his help.

¶6 The next witness to testify was Maryam Faterioun, a social worker who performed a mental health assessment of Evans and reviewed her prior mental health treatment records. Faterioun testified about Evans's mental health history and current functional limitations. According to Faterioun, Evans was previously diagnosed with bipolar disorder with psychotic features and was hospitalized for inpatient treatment four or five times, most recently in 2014 or 2015. During those periods of inpatient treatment, Evans "struggled with understanding the need for medication compliance, but [her] symptoms of psychosis did seem to improve." With regard to Evans's current condition, Faterioun explained that Evans exhibited "paranoia, some delusions, thought

blocking, which is a symptom of thought disorder, and is unable to provide an explanation of how to meet her needs in the community." She testified that Evans was paranoid about "using phones, computers, about changing [her address] to [Zitzelsberger]'s address," and applying for benefits.

¶7     To address these issues, Faterioun testified that Evans needed "to be stabilized on medication" and to have "ongoing follow up," initially on an inpatient basis, due to her "report of not needing psychotropic medications for her mental health and the history of noncompliance on an outpatient basis." Absent such inpatient treatment, Faterioun believed that Evans would suffer severe mental, emotional, and physical harm because, among other things, her "ability to manage the things in her life independently" and "to have linear thought processes and function" would likely decrease. Finally, Faterioun explained that she had discussed the advantages and disadvantages of several medications with Evans but that Evans did not understand how they could help her current symptoms. Faterioun reported that Evans declined mental health treatment during Faterioun's assessment and that Evans does not believe she is mentally ill.

¶8     Doctor Cary Kohlenberg, a psychiatrist appointed by the Court to examine Evans, testified about Evans's current mental health status and functioning. According to Kohlenberg, Evans suffers from a treatable mental illness, bipolar disorder, which has caused "impairments in her thought process, as well as paranoia and persecutory thoughts … mood symptoms, depression, mood lability, and anxiety." Kohlenberg acknowledged that these symptoms "grossly impair" Evans's "judgment, capacity to recognize reality, [and] ability to meet ordinary demands of life." As an example of this impairment, Kohlenberg testified that Evans "opined that she has no major mental illness" and denied needing medical treatment when he discussed his diagnosis with her. Kohlenberg

agreed that Evans was a proper subject for treatment, including "medication to help with anxiety and mood stabilization and psychosis." Kohlenberg testified that he discussed the advantages and disadvantages of psychotropic medications with Evans, as well as potential alternatives to medication, but that she "could not recognize" that she needed to be on medication or its potential benefits.

¶9 When asked about "the least restrictive placement consistent with her needs," Kohlenberg stated that Evans's treatment "does need to start out on an inpatient level of care" to "get her medications going and monitor her safety, and also because of the severity of her mood and thought symptoms." Kohlenberg also expressed his belief that Evans was dangerous because of her underlying mental illness and refusal to voluntarily continue treatment.

¶10 The last witness to testify, Dr. Rada Malinovic, is a psychiatrist at the Waukesha Mental Health Center who also evaluated Evans. Like Kohlenberg, Malinovic diagnosed Evans with bipolar disorder with psychotic features and opined that she should be housed in "a locked inpatient unit" for one to two weeks because she needed "further medication stabilization and further time for the medications to reach therapeutic effect."

¶11 After these witnesses testified, the circuit court set forth its findings of fact and reasons for granting the County's petition under the fifth standard. Citing Kohlenberg's testimony, the court found that Evans was suffering from bipolar disorder, which caused impairments in thought, paranoia, and "depression or anxiety." The court found that Evans's condition was impairing her judgment and preventing her from meeting her basic housing and financial needs and that she needed mental health treatment. The court also cited Faterioun's concern that Evans would deteriorate mentally, emotionally, and physically if she did not

continue taking medication. The court credited Kohlenberg's testimony that Evans's condition was treatable and that she had already responded to medication but noted the concerns expressed by multiple witnesses that Evans was not capable of recognizing the benefits of medication and might stop taking it. The court found that Evans's mental illness prevented her from understanding the advantages and disadvantages of medication, and that she could not make an informed choice about whether to refuse medication.

¶12 Based upon these findings, the circuit court found that Evans met the three requirements for involuntary commitment: she was (1) mentally ill; (2) dangerous; and (3) "a proper subject for treatment." *See D.J.W.*, 391 Wis. 2d 231, ¶29.

¶13 The circuit court then addressed the first exclusion in the fifth standard, which applies when there is a reasonable probability that an individual will take advantage of treatment available in the community, and found that it did not apply to Evans. The court did not specifically address the second exclusion, which applies where protective placement or protective services under WIS. STAT. ch. 55 may be available to the individual. *See* WIS. STAT. § 51.20(1)(a)2.e. However, based on its finding that the first exclusion did not apply, the court ordered that Evans be committed for six months with the "maximum level of treatment [being] a locked inpatient facility" from which she was to be discharged within thirty days. The court also entered an order for involuntary medication and treatment during Evans's commitment.

## DISCUSSION

¶14 Our review of the circuit court's decision presents a mixed question of law and fact. *D.J.W.*, 391 Wis. 2d 231, ¶24. We will uphold a circuit court's

findings of fact unless they are clearly erroneous, but whether the facts satisfy the statutory standard of dangerousness is a question of law that we review independently. *Id.*, ¶¶24-25.

¶15 Evans does not challenge any of the circuit court's factual findings, or its conclusions that: (1) she could not understand the advantages and disadvantages of taking medication; and (2) there was a substantial probability that, if left untreated, she would not avail herself of necessary services, and would suffer severe mental, emotional, or physical harm that will result in the loss of Evans's ability to function independently in the community. Instead, she focuses on what is purportedly missing from the court's decision: an analysis of the second exclusion in the fifth standard concerning protective placement or protective services under WIS. STAT. ch. 55. *See* WIS. STAT. § 51.20(1)(a)2.e.

¶16 Our analysis starts with the language of the exclusion. WISCONSIN STAT. § 51.20(1)(a)2.e. states that an individual does not have a substantial probability of "suffering severe mental, emotional, or physical harm … if the individual may be provided protective placement or protective services under [WIS. STAT.] ch. 55." The purpose of this exclusion is "to avoid commitment for treatment if it is reasonably probable that … placement or services available under WIS. STAT. ch. 55 will provide the needed treatment." *Dane County v. Kelly M.*, 2011 WI App 69, ¶21, 333 Wis. 2d 719, 798 N.W.2d 697. In *Kelly M.*, we concluded that this exclusion is potentially applicable to a person already subject to an order for protective placement or services under ch. 55 at the time involuntary commitment is sought, and also to a person "who is not yet subject to a ch. 55 order but who is eligible for one." *Id.*, ¶32.

¶17 Evans concedes that she was not subject to a WIS. STAT. ch. 55 order for protective placement or services when the County filed its petition. Instead, she contends that she was eligible for such an order because her bipolar disorder constitutes a "serious and persistent mental illness" for which protective placement or services are available under ch. 55. *See* WIS. STAT. §§ 55.01(6v) (defining "[s]erious and persistent mental illness"), 55.08(1)(c), and 55.08(2)(b). Thus, Evans argues, in order to prove that she is "dangerous" under the fifth standard, the County had to prove that protective services under ch. 55 could not reduce her risk of harm to less than a substantial probability. In her view, because the County did not prove that her needs "could not be met through less restrictive ch. 55 services, specifically a medication order under WIS. STAT. § 55.14," the circuit court's orders must be reversed.

¶18 The County offers two responses to Evans's argument. First, it argues that the circuit court implicitly found the WIS. STAT. ch. 55 exclusion inapplicable because it determined that Evans needed inpatient psychiatric treatment, which the County argues is not available under ch. 55. Second, the County contends that Evans does not meet all of the statutory requirements to be eligible for protective placement or services under ch. 55. We agree with the County's second argument, and because it is sufficient to dispose of this appeal, we need not address the first argument. *See **State v. Davis***, 2021 WI App 65, ¶38 n.10, 399 Wis. 2d 354, 965 N.W.2d 84 (court of appeals need not address all issues raised by parties when one issue is dispositive).

¶19 The WIS. STAT. ch. 55 exclusion did not apply to Evans for two reasons. First, she did not meet at least one of the eligibility requirements for protective placement or services under ch. 55. Eligibility for protective placement or protective services is governed by WIS. STAT. § 55.06, which states in relevant

part that "[p]rotective placement or protective services may be ordered under [ch. 55] only for an individual who is adjudicated incompetent in this state … and only if there is a finding of a need for protective placement under [WIS. STAT. §] 55.08(1)." Sec. 55.06. Section 55.08(1), in turn, states that protective placement may be ordered "for an individual who meets all of the following standards":

> (a) The individual has a primary need for residential care and custody.
>
> (b) The individual is a minor who is not alleged to have a developmental disability and on whose behalf a petition for guardianship has been submitted, or is an adult who has been determined to be incompetent by a circuit court.
>
> (c) As a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual is so totally incapable of providing for his or her own care or custody as to create a substantial risk of serious harm to himself or herself or others. Serious harm may be evidenced by overt acts or acts of omission.
>
> (d) The individual has a disability that is permanent or likely to be permanent.

Sec. 55.08(1)(a)-(d). The statute states further that protective services may be ordered "for an individual who meets all of the following standards":

> (a) The individual has been determined to be incompetent by a circuit court or is a minor who is alleged to have a developmental disability and on whose behalf a petition for a guardianship has been submitted.
>
> (b) As a result of developmental disability, degenerative brain disorder, serious and persistent mental illness, or other like incapacities, the individual will incur a substantial risk of physical harm or deterioration or will present a substantial risk of physical harm to others if protective services are not provided.

Sec. 55.08(2)(a)-(b).

¶20    As WIS. STAT. §§ 55.06 and 55.08 make clear, an adult such as Evans is eligible for protective placement or services only if she has been found incompetent by a circuit court. Competency determinations are governed by WIS. STAT. § 54.10(3)(a), which sets forth the circumstances under which a court may appoint a guardian on the basis of incompetency. A person "who has been adjudicated by a court as meeting the requirements of [§] 54.10(3)," is deemed "incompetent." WIS. STAT. § 54.01(16).

¶21    In its petition, the County wrote "n/a," which we presume means "not applicable," in a box where it was to identify Evans's "Parents or Guardian." This indicates that Evans did not, in fact, have a guardian when the petition was filed. Evans does not dispute this point in her appellate briefs. Nor does she direct us to any portion of the record in which she disputed the County's assertion that she did not have a guardian. Our own review of the evidentiary hearing transcript reveals no mention of a guardian (or lack thereof).

¶22    That Evans did not have a guardian indicates that a circuit court had not found her incompetent under WIS. STAT. § 54.10(3)(a). Again, Evans does not argue otherwise in her briefs or direct us to anything in the record suggesting that she had been found incompetent. Thus, Evans's contention that the record shows that she was "potentially eligible" for protective placement or services is unsupported. The record contains nothing to suggest that Evans had already been determined to be incompetent. For this reason, she did not meet at least one eligibility requirement for protective placement or services under WIS. STAT. § 55.08.

¶23 A second reason why the WIS. STAT. ch. 55 exclusion did not apply to Evans concerns the treatability of her condition and the different purposes served by involuntary commitments under WIS. STAT. ch. 51 and protective placements and services under ch. 55. Our supreme court discussed this difference in *Fond du Lac County v. Helen E.F.*, 2012 WI 50, 340 Wis. 2d 500, 814 N.W.2d 179. In that case, the court explained that "ch. 55 was specifically tailored by the legislature to provide for long-term care of individuals with incurable disorders, while ch. 51 was designed to facilitate the treatment of mental illnesses suffered by those capable of rehabilitation." *Helen E.F.*, 340 Wis. 2d 500, ¶13; *see also id.*, ¶21 ("Chapter 51 is designed to accommodate short-term commitment and treatment of mentally ill individuals, while ch. 55 provides for long-term care for individuals with disabilities that are permanent or likely to be permanent.").

¶24 The testimony concerning Evans's condition and proposed treatment plan shows that WIS. STAT. ch. 51 offered the more appropriate mechanism for treating her. Kohlenberg and Malinovic testified that Evans's bipolar disorder was treatable through medication and that she only needed to be committed for a short time to ensure that she continued to take it and to allow it to reach therapeutic effect. When asked directly if "there [were] any concerns that [Evans] is perhaps not treatable," Kohlenberg answered, "No." No testimony or other evidence was presented suggesting that Evans's condition was untreatable or that she required long-term care. Absent such evidence, we see no reason why the circuit court could have found the WIS. STAT. ch. 55 exclusion applicable to Evans.

¶25 For these reasons, we conclude that when the circuit court found Evans dangerous under the fifth standard, she was neither "subject to an order for protective placement or services" under WIS. STAT. ch. 55 nor "eligible for one."

*See Kelly M.*, 333 Wis. 2d 719, ¶32. Based upon this conclusion, the ch. 55 exclusion did not apply to her.

## CONCLUSION

¶26 When a finding of dangerousness is made under the fifth standard, a circuit court must consider whether an individual may be provided protective placement or services under WIS. STAT. ch. 55 and whether such placement or services will reduce the risk that the individual will suffer "severe mental, emotional, or physical harm" to less than a substantial probability. WIS. STAT. § 51.20(1)(a)2.e. Here, the record shows that Evans was not eligible for protective placement or services at the time she was found to be dangerous because she had not previously been found incompetent and because her condition was treatable and required only a short-term commitment. Accordingly, we affirm the order of involuntary commitment and the order for involuntary medication and treatment.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.