COURT OF APPEALS
DECISION
DATED AND FILED

November 2, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP1938**

STATE OF WISCONSIN

Cir. Ct. No. 2021GN19

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE GUARDIANSHIP AND PROTECTIVE PLACEMENT OF L.J.F.G.:

WINNEBAGO COUNTY DEPARTMENT OF HUMAN SERVICES,

    PETITIONER-RESPONDENT,

  V.

L.J.F.G.,

    RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: DANIEL J. BISSETT, Judge. *Affirmed*.

Before Neubauer, Grogan and Lazar, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Emily[1] appeals three orders entered by the circuit court:  (1) an order granting a petition filed by the Winnebago County Department of Human Services (DHS) to appoint a guardian for her; (2) an order granting DHS's petition for protective placement; and (3) an order denying her postdisposition motion to vacate the guardianship and protective placement orders.  Emily contends that the circuit court should have vacated the orders for guardianship and protective placement and dismissed DHS's petitions based upon the doctrine of judicial estoppel.  We affirm.

## BACKGROUND

¶2     We begin our analysis by discussing the relevant legal proceedings.  Emily has been diagnosed with schizoaffective disorder and, according to DHS, has been involuntarily committed under WIS. STAT. ch. 51 orders for years.  We reversed one such order in ***Winnebago County v. L.F.-G.***, No. 2019AP2010, unpublished slip op. (WI App May 20, 2020), after concluding that the County had not proven that Emily was dangerous pursuant to WIS. STAT. § 51.20(1)(am).  Several months after our decision, on October 1, 2020, the circuit court[2] entered a new order committing Emily involuntarily for six months.  In that order, the court found that Emily met the three requirements for involuntary commitment under ch. 51.  *See **Langlade County v. D.J.W.***, 2020 WI 41, ¶29, 391 Wis. 2d 231, 942 N.W.2d 277 ("For a person to be subject to a chapter 51 involuntary commitment,

---

[1] We refer to L.J.F.G. by a pseudonym to protect her dignity and privacy rights.  *See* WIS. STAT. RULE 809.86 (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] The Honorable Scott C. Woldt presided over the WIS. STAT. ch. 51 proceedings discussed in this opinion.

three elements must be fulfilled: the subject individual must be (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others.").

*The Guardianship Proceeding*

¶3 In January 2021, while Emily was under the October 2020 commitment order, DHS filed the petitions for guardianship and protective placement at issue here, which were heard by a different branch of the circuit court.[3] In the guardianship petition, DHS alleged that Emily has a "serious and persistent mental illness" and that "[d]espite numerous hospitalizations, placements, and medication changes over the years [she] continues to be highly symptomatic[,] irrational and delusional, at times psychotic, and is unable to meet her mental health care needs." Similarly, DHS alleged in the petition for protective placement that Emily has a "serious and persistent mental illness" and "a disability that is permanent or likely to be permanent."

¶4 In addition to the petitions, DHS filed a report from a psychiatrist, Marshall J. Bales, M.D., who wrote that Emily's schizoaffective disorder constitutes a "[s]erious and persistent mental illness" and that she "has proven to be untreatable for many aspects of this condition." Bales also confirmed that Emily's "incapacity" is "permanent or likely to be permanent."

¶5 The circuit court appointed a psychologist, James Black, Ph.D., to examine Emily and prepare a report concerning her mental condition. In his report, Black diagnosed Emily with "Schizoaffective Disorder and Unspecified Personality Disorder," a condition that "substantially impairs the individual from adequately

---

[3] The Honorable Daniel J. Bissett presided over the guardianship and protective placement proceedings discussed in this opinion and entered the three orders which are the subject of this appeal.

providing for his or her own care or custody and constitutes a substantial handicap to the afflicted individual." He discussed Emily's "history of verbal and physical aggression," threatening behavior, and delusions, which had resulted in repeated periods of detention or commitment stretching back to 2015. He also concluded that Emily's condition is a "[s]erious and persistent mental illness" that is "unlikely to resolve with treatment." Black explained that conclusion as follows:

> There may be improvement in the areas of judgment and decision-making when the right medication regimen is in place and she is compliant. She still presents a substantial risk of dangerousness due to her significantly impaired judgment, manic behavior and delusional thinking. The most important aspect for her stability currently is a structured, supportive living situation.

Black stated that Emily needed placement in a locked facility on a twenty-four-hour basis, and her "[WIS. STAT.] Chapter 51 should remain in effect to ensure compliance with treatment in addition to the Guardianship and Protective Placement."

¶6      Bales and Black testified at the final hearing on DHS's petitions, which was held on March 4, 2021. Bales testified that Emily continued to be severely impaired in both executive and behavioral functioning "from a very long-standing history of schizo-affective disorder. She is delusional. She is not reality-based, and in spite of that she is not cognitively delayed. She is still grossly impaired with her reasoning and so forth." He confirmed that Emily's "[s]evere mental illness" was "likely to be permanent." He agreed that Emily is incompetent, needed a guardian, and should be placed "in a licensed, certified, registered setting."

¶7      Black acknowledged that Emily's diagnosed condition substantially impaired her ability to care for herself and "to meet the essential requirements for

[her] health and safety." He opined that Emily is incompetent because of "her delusional state, manic episodes, [and] significantly-impaired judgment"; that her "ability to make rational decisions for financial and health matters is significantly impaired"; and that she needed a guardian and "placement at a licensed, certified, registered" facility. When asked whether he believed Emily's "incapacity is likely to be permanent," Black responded: "It is likely to be. There certainly can be some improvement based on medications and certainly the possibility of intervention, but the basic disorder of schizo-affective is a permanent disorder, though it can be managed with psychotropic medication."

¶8 Based upon Bales's and Black's testimony, the circuit court granted DHS's petitions. As to the issue of guardianship, the court stated that it was "satisfied … that due to [Emily's] persistent mental health condition of schizo-affective disorder that she is not competent in regards to her personal affairs as well as in regards to her financial or property affairs, that it is a permanent or likely-to-be-permanent condition." With respect to DHS's request for permanent placement, the court determined that Emily had "a substantial primary need for residential care and custody and that she is so totally incapable of providing for her own care and custody so as to present a substantial risk of harm both to herself and others." In light of these determinations, and Bales's and Black's concern that Emily presented a risk of elopement, the court ordered that she be placed in a locked facility. Written orders granting DHS's petitions were entered by the court on March 8, 2021.

*The Recommitment Proceeding*

¶9 On March 1, 2021, several days before the guardianship hearing, the County filed a petition to recommit Emily under WIS. STAT. ch. 51 for another year. A hearing on the County's petition was held on March 16, 2021. The County called

one witness, Dr. Leslie Taylor, M.D., a psychiatrist who had been appointed by the court to examine Emily.

¶10     Taylor testified concerning the three elements required for involuntary commitment under WIS. STAT. ch. 51.  First, she testified that Emily suffers from a mental illness—schizoaffective disorder—and acknowledged that it "grossly impair[s Emily's] judgment, behavior, capacity to recognize reality[, and] the ability to meet the ordinary demands of life."  Second, Taylor agreed that Emily remained a proper subject for treatment because psychotropic medications would "have a therapeutic value for her."  Third, Taylor testified that Emily was dangerous because:  (1) of her history of "threats to the community," including sending threatening emails; (2) she would become a proper subject for commitment if her current treatment was withdrawn; and (3) she was not capable of expressing an understanding of the advantages, disadvantages, and alternatives to taking medication.

¶11     At the March 16 hearing on the County's petition, Emily opposed recommitment because she was subject to the guardianship and protective placement orders that had been entered on March 8, 2021.  Without addressing this argument, the circuit court found that Emily met the criteria for recommitment and granted the County's petition.

*The Postdisposition Motion*

¶12     In August 2021, Emily filed a postdisposition motion in the guardianship proceeding seeking to vacate the guardianship and protective placement orders and dismiss DHS's petitions.  Emily argued that DHS should have been judicially estopped from seeking guardianship and protective placement because its position in the guardianship proceeding—that Emily's mental illness is

permanent and unlikely to resolve with treatment—was clearly inconsistent with the County's position in the WIS. STAT. ch. 51 recommitment proceeding—that Emily continued to be a proper subject for treatment.

¶13   On September 15, 2021, before the circuit court held a hearing on Emily's postdisposition motion, this court summarily reversed the order granting the County's WIS. STAT. ch. 51 recommitment petition. *Winnebago County v. L.F.G.*, No. 2021AP1063, unpublished op. and order (WI App Sept. 15, 2021).  In that appeal, this court determined that the evidence presented to the circuit court was insufficient to support a finding that Emily was dangerous. *Id.* at 2.  The two standards under which the County sought to establish dangerousness contain an exclusion when "the individual may be provided protective placement or protective services under [WIS. STAT.] ch. 55." WIS. STAT. § 51.20(1)(a)2.c., e.  Under both standards, a court must determine whether there are services available under "ch. 55 that would be effective in reducing the probability of the requisite harm to less than a substantial probability." *Dane County v. Kelly M.*, 2011 WI App 69, ¶32, 333 Wis. 2d 719, 798 N.W.2d 697.  We summarily reversed the order recommitting Emily because the County had not "present[ed] evidence about the availability or nonavailability of services to [her] under her protective placement order and whether those services would be enough to reduce the probability of harm to less than a substantial probability," nor had the circuit court made findings on this issue. *L.F.G.*, No. 2021AP1063, at 2.  Notably, the County did not oppose reversal.

¶14   Six weeks after this court issued its decision, the circuit court held a hearing on Emily's postdisposition motion.  At that point, Emily was no longer under any WIS. STAT. ch. 51 commitment or medication orders, and the County acknowledged that it would no longer pursue involuntary commitment under ch. 51 because it had concluded that Emily's condition "is permanent in nature, and

probably … best addressed" through guardianship and protective placement. Nonetheless, Emily continued to argue that the guardianship and permanent placement orders should be vacated because DHS's position in the guardianship proceeding that Emily's condition is permanent and not treatable is inconsistent with the County's position in her ch. 51 proceedings that she was suitable for treatment.

¶15   The circuit court reviewed the testimony about the permanency of Emily's condition from the guardianship hearing. The court also noted that "doctors that have a differing opinion on the treatability" of her condition testified at the recommitment hearing, a circumstance it described as "not uncommon":

> And it's not uncommon in many types of cases for professionals—specifically doctors—to have conflicting or different opinions about even what type of mental illness somebody has and as to how it is affecting their life and whether it's treatable or not or what the least restrictive placement might be for an individual and whether there's dangerous behavior or not. Doctors do not always agree on all of those things.

¶16   Ultimately, the court denied Emily's postdisposition motion, noting that the guardianship hearing had taken place twelve days before the recommitment hearing under WIS. STAT. ch. 51, and thus her estoppel argument "would have been potentially more persuasive" in the recommitment hearing.

## DISCUSSION

¶17   On appeal, Emily does not challenge the sufficiency of the evidence presented in support of the orders for guardianship or protective placement. Instead, she contends that the circuit court erred in denying her postdisposition motion because DHS should have been judicially estopped from seeking guardianship and protective placement.

8

¶18 Judicial estoppel is an equitable doctrine that seeks to preserve the integrity of the judicial process by preventing litigants from "playing 'fast and loose with the courts' by asserting inconsistent positions" in different legal proceedings. *State v. Fleming*, 181 Wis. 2d 546, 557, 510 N.W.2d 837 (Ct. App. 1993) (quoting *Yanez v. United States*, 989 F.2d 323, 326 (9th Cir. 1993) (citation omitted)). There are three elements that must be shown for judicial estoppel to apply: "(1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court to adopt its position." *State v. Ryan*, 2012 WI 16, ¶33, 338 Wis. 2d 695, 809 N.W.2d 37. We review de novo whether the elements of judicial estoppel are present because it is a question of law. *Id.*, ¶30.

¶19 Even "[i]f the elements are met, however, the decision to invoke the doctrine is left to the discretion of the circuit court." *Id.* The doctrine is intended to prevent "cold manipulation" of the judicial process. *State v. Petty*, 201 Wis. 2d 337, 354, 548 N.W.2d 817 (1996).

¶20 Emily contends that the elements for judicial estoppel are present here. First, she argues that the County consistently took the position in her WIS. STAT. ch. 51 proceedings that her mental illness was treatable, which she says is "clearly inconsistent" with the position DHS took in her guardianship proceeding that her condition is "permanent and untreatable." Second, she argues that the facts at issue in her ch. 51 and guardianship proceedings are the same, a position DHS concedes. Finally, Emily contends that the County convinced the ch. 51 court to adopt its position that she was treatable before persuading a different court to find her untreatable and thus a proper candidate for guardianship and protective placement. Based upon our review of the record, we conclude that the circuit court

did not err in declining to apply judicial estoppel in the guardianship proceeding for two reasons.

¶21 First, notwithstanding the parties' agreement to the contrary, the facts in the guardianship proceeding were different than those in Emily's WIS. STAT. ch. 51 proceedings.[4] We are not bound by DHS's concession that the "same facts" element is satisfied because whether the elements for judicial estoppel are met is a question of law. *See **Ryan**,* 338 Wis. 2d 695, ¶30; ***State v. Carter***, 2010 WI 77, ¶50, 327 Wis. 2d 1, 785 N.W.2d 516 (courts "are not bound by the parties' interpretation of the law or obligated to accept a party's concession of law"). Here, although the experts in each proceeding diagnosed Emily with the same mental illness—schizoaffective disorder—they reached different conclusions on a key factual issue—her suitability for treatment.

¶22 Our supreme court explored this point in ***Fond du Lac County v. Helen E.F.***, 2012 WI 50, 340 Wis. 2d 500, 814 N.W.2d 179. In that case, the supreme court distinguished involuntary commitment under WIS. STAT. ch. 51 and confinement under WIS. STAT. ch. 55 in part by their underlying goals. Whereas "the legislature designed … ch. 55 to be used for long-term care," commitment under ch. 51 is intended "for short term treatment and rehabilitation intended to culminate with re-integration of the committed individual into society." ***Helen E.F.***, 340 Wis. 2d 500, ¶29. The court explained further that whether a person is a "proper subject for treatment" under ch. 51 depends on whether the person is capable of "rehabilitation." ***Helen E.F.***, 340 Wis. 2d 500, ¶30 (citing WIS.

---

[4] Although the circuit court did not specifically address this element in its decision, we may affirm its decision on different grounds than it relied upon. *See **Biskupic v. Cicero**,* 2008 WI App 117, ¶19 n.5, 313 Wis. 2d 225, 756 N.W.2d 649 ("[I]t is well-settled law that we may affirm a judgment on different grounds than those relied on by the circuit court.").

STAT. § 51.01(17)). The "fact-based test" adopted by the court for making that determination focuses on whether treatment will control the underlying disorder and its symptoms, in which case the person "is a proper subject for treatment," or whether treatment will improve the person's "functioning and maintenance" but will not "help[] in controlling or improving their disorder[]," in which case the person is not. *Helen E.F.*, 340 Wis. 2d 500, ¶36 (quoting *C.J. v. State*, 120 Wis. 2d 355, 362, 354 N.W.2d 219 (Ct. App. 1984)).

¶23 The medical experts who testified in Emily's guardianship and recommitment proceedings reached different conclusions on this key issue of fact. In the guardianship proceeding, Dr. Bales and the court-appointed psychologist, Dr. Black, described Emily's schizoaffective disorder as a "serious and persistent mental illness." *See* WIS. STAT. § 55.08(1)(c). At the guardianship hearing, Bales confirmed that this disorder is "likely to be permanent." Black testified similarly that Emily's condition is "likely to be" permanent, even though it can be "managed with psychotropic medication."

¶24 The judge who presided over Emily's WIS. STAT. ch. 51 recommitment hearing heard different evidence concerning her suitability for treatment. In that hearing, Dr. Taylor, a court-appointed psychiatrist, confirmed that Emily was a proper candidate for treatment and that psychotropic medications would "have a therapeutic value for her." The court relied on this testimony in determining that Emily continued to meet the statutory criteria for involuntary commitment under WIS. STAT. § 51.20(1)(a).

¶25 Although the medical experts in each proceeding testified that Emily suffered from the same mental illness and identified the same symptoms (e.g., delusional thinking and impaired judgment), they gave different testimony as to

whether treatment would rehabilitate her. The different facts concerning that issue in each proceeding preclude the application of judicial estoppel.

¶26    Emily's judicial estoppel argument fails for a second reason. Even if she could establish the three elements for its application, we would not disturb the circuit court's discretionary decision not to apply judicial estoppel because DHS's conduct in seeking a guardianship and protective placement does not constitute a "manipulative perversion of the judicial process, which the doctrine of judicial estoppel is designed to combat." *Petty*, 201 Wis. 2d at 354.

¶27    DHS did not withhold from the circuit court in the guardianship proceeding that Emily was subject to a commitment order under WIS. STAT. ch. 51. It disclosed that fact in its petition and explained that "[d]espite numerous hospitalizations, placements, and medication changes over the years [she] continues to be highly symptomatic[,] irrational and delusional, at times psychotic, and is unable to meet her mental health care needs." In addition, DHS's explanation of Emily's condition suggests that its decision to seek a guardianship and permanent placement was not an "attempt to coldly manipulate the judicial process," *see* *Fleming*, 181 Wis. 2d at 558, but rather stemmed from its conclusion that Emily had not been rehabilitated during her repeated commitments under ch. 51 and that protective placement under WIS. STAT. ch. 55 had become the more appropriate vehicle to address her needs. The County's decision to end its efforts to involuntarily commit Emily under ch. 51 following this court's summary reversal in *L.F.G.* further shows that DHS's position in the guardianship proceeding resulted from an evolution in thinking about the most appropriate vehicle for treating Emily's condition and was not an attempt to pervert the judicial process. Finally, the circuit court reviewed the transcript from the guardianship hearing and determined that DHS had met its burden of proof with respect to guardianship and

protective placement, which Emily does not challenge. That DHS presented sufficient evidence to justify the guardianship and protective placement orders supports the conclusion that its position in the guardianship proceeding was supported by the facts and not an opportunistic attempt to manipulate the courts. Thus, the circuit court did not erroneously exercise its discretion in denying Emily's postdisposition motion.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.