COURT OF APPEALS
DECISION
DATED AND FILED

April 29, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP2798**

STATE OF WISCONSIN

Cir. Ct. No. **2025ME103**

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF J.E.C.

WASHINGTON COUNTY,

    PETITIONER-RESPONDENT,

  V.

J.E.C.,

    RESPONDENT-APPELLANT.

        APPEAL from orders of the circuit court for Washington County: SANDRA J. GIERNOTH, Judge. *Affirmed.*

¶1 LAZAR, J.[1] Jennifer[2] appeals the circuit court order finding her dangerous and involuntarily committing her. For the reasons stated below, this court affirms the circuit court's orders.

## BACKGROUND

¶2 In July 2025, Jennifer left her group home and entered a stranger's garage. Deputy Adrianna LaMack arrived at the scene where she noted that Jennifer was "agitated and rambling about being hurt by police … and [was] not making sense" and "repeatedly refused to leave th[e] residence[,]" and she filed for emergency detention of Jennifer. The circuit court set a WIS. STAT. ch. 51 commitment hearing and appointed two examiners: Dr. Marshall Bales and Dr. Jonathan Grapengieser. *See* WIS. STAT. § 51.20(1), (9). At the final hearing, psychiatrist Dr. Bales testified that Jennifer has a "very severe mental illness and suffers from schizoaffective disorder." He affirmed that "[Jennifer]'s condition grossly impair[s] her judgment, behavior, capacity to recognize reality, [and] ability to meet the ordinary demands of life[.]" With respect to Jennifer's impaired judgment, he said, "I would like to [offer] one more very critical example [that] is she will not take medications for her severe mental health problems voluntarily, and that's very impaired judgment." He testified that her mental illness is treatable, but said he believed her to be dangerous, stating, "there [are] numerous ways in which she is either dangerous or endangered." Bales explained that she "gets threatening with people, cursing, yelling, screaming

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] This court refers to the subject individual by a pseudonym pursuant to WIS. STAT. § 809.19(1)(g), to protect her confidentiality.

repeatedly[,]" and that he even "had some fear for [his] safety during the medication review[.]" He also testified that Jennifer "wanders off[,]" pokes at herself, and is "simply ... not able to care for her basic needs."

¶3     Dr. Bales identified antipsychotic and mood stabilizing medications that would help her with her "mood symptoms" and "will help her think more clearly as well." He recommended inpatient treatment but said, "I think if she is on her medications and has a [WIS. STAT. § ch.] 51 in place with [an] involuntary medication order, she might be able to be back in the same group home … . When I saw her, she needed inpatient care on a locked unit."[3]

¶4     Mary[4] next testified. She was a college student who was staying at her family's home in July 2024, where she and her family were building furniture in their garage, when on July 12th, they noticed Jennifer standing by their mailbox. Mary testified that Jennifer appeared mentally ill, seemed to be talking to herself, and appeared agitated. She testified that Jennifer came up the driveway and sat in a chair in the garage while continuing to talk to herself. While her father continued to build furniture, her mother entered the house, to ultimately call law enforcement. Mary and her father asked Jennifer to leave and offered to get her a ride to her destination, but Jennifer refused.

---

[3] Jennifer objected to some of Dr. Bales's testimony because he spoke about some of her prior conduct and behavior he learned from her treatment records. The circuit court accepted the hearsay testimony not for the truth of the matter asserted but as the basis for Dr. Bales's opinion about Jennifer's mental illness.

[4] This court also refers to this witness by a pseudonym pursuant to WIS. STAT. § 809.19(1)(g), to protect her confidentiality.

¶5      Deputy LaMack testified that she was dispatched on July 10, 2024 to the vicinity of Jennifer's group home where a caller "reported that there was a woman walking around the neighborhood barking."  When she arrived at the group home, she spoke with Jennifer who complained that the group home owner had taken a hammer from her, that "everyone was operating above the law" and she had been "anally probed[.]"  She also testified that she responded to the call from Mary's mother on July 12, 2024.  She arrived at Mary's family's home, which was "approximately a mile" from Jennifer's group home.  She "tried [unsuccessfully] for approximately an hour" to get Jennifer to go back to her group home.  Deputy Mack then placed Jennifer under a WIS. STAT. ch. 51 emergency detention.

¶6      Jennifer moved the circuit court to take judicial notice of her ongoing protective placement and guardianship in Washington County, which the court accepted.  The County argued it met its burden for a WIS. STAT. ch. 51 commitment and involuntary medication order.  It argued it had showed dangerousness under WIS. STAT. 51.20(1)(a)2.c.

¶7      Jennifer argued that the County could not prove dangerousness under that standard, because "the probability of physical impairment or injury is not substantial under this subsection if the individual may be provided protective placement or protective services under [WIS. STAT. ch.] 55[.]"  She argued that as she was presently on a protective placement order, the standard could not be met.

¶8      The circuit court determined that Jennifer could be committed under WIS. STAT. ch. 51 because it "cannot find where [ch.] 51 and [WIS. STAT. ch.] 55 are necessarily mutually exclusive when the person in need … has a treatable mental illness."  The court also found that Jennifer has a mental illness that

4

Dr. Bales identified as treatable and noted Dr. Bales's testimony that Jennifer's "diagnosis impairs her judgment and her concepts of reality."

¶9    Turning to dangerousness, the circuit court relied on Mary's and Deputy LaMack's testimony in complement to Dr. Bales's opinion. It noted testimony that Jennifer "was in the vicinity of the mailbox belonging to the residence appearing to talk to herself, appear[ing] agitated." The court also found that Jennifer "walked up the driveway, entered the garage without permission, sat in a chair … and continued to speak nonsense to herself." The court found that Jennifer declined Mary's family's offer to get her a ride to her destination, until ultimately law enforcement intervened. The court said that two days prior, Jennifer was walking by herself outside of her group home. These two incidents, the court determined, presented "a dangerousness … to herself. She has an impaired judgment that results in her leaving what is a safe and stable environment for herself under circumstances that demonstrate her endangering herself causing a probability of physical impairment to herself under these circumstances." The court stated that when Jennifer leaves the group home, she lacks the ability to get to a safe destination and must be guided by "[G]ood [S]amaritans." Jennifer's walking also "endangers her by being susceptible to victimization of crime or other harm by being out in the community[.]" Thus, the court concluded that Jennifer was dangerous under WIS. STAT. § 51.20(1)(a)2.c. The court said:

> the current protective placement in place has not adequately met [Jennifer]'s needs in order to prevent her from endangering herself.
>
> To Dr. Bales['s] point that [Jennifer] is endangered, that is the finding the [c]ourt relies on in concluding that the current protective placement is not adequate and, therefore, the potential -- or excuse me, the probability for physical impairment is substantial at this time, impairment or injury.

¶10   The circuit court issued orders for commitment and involuntary medication.  Jennifer filed a notice of appeal.[5]

## DISCUSSION

¶11   First, Jennifer argues that the County did not prove that she is dangerous to herself or others under WIS. STAT. § 51.20(1)(a)2.c.  Specifically, she argues that there is insufficient evidence to prove that she had engaged in a pattern of dangerous behavior.  In order to commit someone, to protect an individual's due process rights, a county must prove that: (1) the individual is mentally ill, (2) they are a proper subject for treatment, and (3) the individual is dangerous. Sec. 51.20(1)(a)1.-2.  The County must prove that the individual is mentally ill and dangerous by clear and convincing evidence. *Portage County v. J.W.K.*, 2019 WI 54, ¶16, 386 Wis. 2d 672, 927 N.W.2d 509; § 51.20(13)(e).  Whether the County met its burden is a mixed question of law and fact. *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.  This court will not overturn the circuit court's factual findings unless they are clearly erroneous. *Id.* However, this court reviews independently whether the evidence is sufficient to meet the statutory standard. *Id.*

¶12   With respect to dangerousness, the County must prove that the individual is dangerous under one or more of the five standards in WIS. STAT. § 51.20(1)(a)2.a-e.  The circuit court found Jennifer was dangerous under the third standard, § 51.20(1)(a)2.c, which states that the subject individual:

---

[5] While Jennifer does not separately challenge the involuntary medication order, that order is tied to the final commitment order. *See* WIS. STAT. § 51.61(1)(g)3.

6

> Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals. The probability of physical impairment or injury is not substantial under this [WIS. STAT. § 51.20(1)(a)2.c.] if reasonable provision for the subject individual's protection is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services, if the individual may be provided protective placement or protective services under [WIS. STAT.] ch. 55[.]

Sec. 51.20(1)(a)2.c.

¶13 This standard of dangerousness "requires the County to identify recent acts or omissions demonstrating that the individual is a danger to himself or to others." *J.W.K.*, 386 Wis. 2d 672, ¶17. This standard also requires proof that there is a "substantial probability" the subject of the petition for commitment will harm herself or others, where "substantial probability" means "much more likely than not." *Marathon County v. D.K.*, 2020 WI 8, ¶35, 390 Wis. 2d 50, 937 N.W.2d 901 (citation omitted).

¶14 This court concludes that the Record shows sufficient evidence to support the circuit court's findings that Jennifer was dangerous under WIS. STAT. § 51.20(1)(a)2.c. The statute requires "[e]vidence[] such [as] impaired judgment, manifested by evidence of a pattern of recent acts or omissions [such] that there is a substantial probability of physical impairment or injury to himself or herself or other individuals." *Id.* Dr. Bales testified that Jennifer has impaired judgment and does not take her medications, and the Record reflects this impaired judgment, as it shows that Jennifer engaged in a pattern of acts on July 10 and July 12, 2024, in which she left her group home, was unwilling to return on her own, and required law enforcement intervention for her safety. This pattern belies Jennifer's

characterization that "nothing about the nature of these walks suggests any risk of danger."

¶15    On July 10, 2024 she was reported for "barking" outside her group home.  When Deputy LaMack asked Jennifer why she had left the group home, she complained that the group home owner had taken a hammer from her, that "everyone was operating above the law[.]"  Deputy LaMack testified that Jennifer was unwilling to return to the group home.  On July 12th, Jennifer traveled approximately one mile from her group home between 4:00 and 6:00 p.m. when Mary and her family observed Jennifer standing by their mailbox, appearing mentally ill and agitated, and talking to herself.  Jennifer trespassed into a stranger's garage: without permission, she walked into Mary's family's home garage, even though she did not know Mary or Mary's family, and Mary and Mary's family did not know Jennifer, and continued talking to herself.  She refused to leave despite requests from Mary and Mary's family to do so.  Mary's mother was alarmed by Jennifer's behavior and retreated into her home to contact law enforcement.  Deputy LaMack testified that she detained Jennifer due to concerns for her safety.  She said:

> We operate on a reasonable person situation in law enforcement, and a reasonable person would not enter an individual's garage unwanted, refusing to leave.  She didn't recognize that that was incredibly dangerous and that individual, that's trespassing and entering someone's personal space.
>
> She lacked the judgment to go back to her residence. She was very preoccupied with Mark Zuckerberg, nuclear war, being anally probed, and denied any mental health [issues].
>
> So with the lack of insight, the impulsivity, it was very difficult to say she was not a danger to herself.

8

¶16    The evidence shows that Jennifer exhibited a pattern of wandering away from her group home, refusing to take her medication, and refusing to return to her group home, which renders it more likely than not that she will injure herself, if not others.  Based on this evidence, the County offered ample evidence showing Jennifer's impaired judgment through the "pattern of recent acts or omissions" that create "a substantial probability of physical impairment or injury to himself or herself or other individuals."   WIS. STAT. § 51.20(1)(a)2.c. Consequently, this court concludes that the circuit court did not err in concluding Jennifer was dangerous.

¶17    As the second part of her argument, Jennifer contends that the County cannot prove dangerousness under WIS. STAT. § 51.20(1)(a)2.c. because it did not show that the WIS. STAT. ch. 55 exclusion did not apply.[6]  Jennifer's argument fails because Dr. Bales testified that she required inpatient treatment in a locked unit, which the circuit court relied on when it granted a six-month commitment.  In other words, Jennifer required care in a locked inpatient unit because her treatment needs could not be met through ch. 55 services.

¶18    Jennifer points to language in the statute that "identifies a situation where an individual cannot be found dangerous even if they may meet the other statutory criteria":

---

[6] Washington County argues that Jennifer forfeited this argument for not raising it before the circuit court.  Jennifer replies that she raised it when she sought clarification with respect to the exclusion.  The Record also shows that Jennifer argued before the court that the third standard under WIS. STAT. § 51.20(1)(a)2 was not met because she was already on a protective placement order.  The forfeiture rule, however, does not apply to sufficiency of the evidence challenges on appeal in a civil bench trial.  WIS. STAT. § 805.17(4) ("In actions tried by the court without a jury, the question of the sufficiency of the evidence to support the findings may be raised on appeal whether or not the party raising the question has objected in the trial court to such findings or moved for a new trial.").

> The probability of physical impairment or injury is not substantial under this [WIS. STAT. § 51.20(1)(a)2.c.] if reasonable provision for the subject individual's protection is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services, if the individual may be provided protective placement or protective services under [WIS. STAT.] ch. 55[.]

WIS. STAT. § 51.20(1)(a)2.c.

¶19 Jennifer's view is that because she was already subject to an order for protective placement and services under WIS. STAT. ch. 55, she cannot be committed under the third standard in WIS. STAT. § 51.20(1)(a)2. She relies on a case implicating the fifth standard for dangerousness under the statute, which has parallel construction with respect to the exclusion, *Dane County v. Kelly M.*, 2011 WI App 69, 333 Wis. 2d 719, 798 N.W.2d 697, in which the appellant "contend[ed] this language means that, for any person eligible for or already subject to protective placement or services under … ch. 55, there can never be a substantial probability of the requisite harm." *Id.*, ¶19. But *Kelly M.* does not support Jennifer's claim because that court found that the appellant's interpretation of the exclusion was inconsistent with its purpose and was unreasonable. *Id.*, ¶22.

¶20 Further, Jennifer's argument is misplaced as it ignores express statutory language allowing commitment under WIS. STAT. § 51.20 of persons subject to a WIS. STAT. ch. 55 order. WISCONSIN STAT. § 55.12(2) provides:

> An individual who is subject to an order for protective placement or protective services may be detained on an emergency basis under [WIS. STAT. § ]51.15 or involuntarily committed under [WIS. STAT. § ]51.20 … . No individual who is subject to an order for protective placement or services may be involuntarily transferred to, detained in, or committed to a treatment facility for care except under [§§] 51.15 or 51.20.

¶21 Thus, commitment under WIS. STAT. § 51.20 is clearly available for persons subject to an order for protective placement or services. Jennifer's argument ignores the language in § 51.20(1)(a)2.c qualifying the fact of the individual's protective placement or protective services under WIS. STAT. ch. 55 with "there is a reasonable probability that the individual will avail himself or herself of these services." Sec. 51.20(1)(a)2.c. The circuit court found that there was no reasonable probability that Jennifer would avail herself of these services, stating that "the current protective placement in place has not adequately met [Jennifer]'s needs in order to prevent her from endangering herself." Given the facts reasonably found by the court, that was not a clearly erroneous determination. Accordingly, this court concludes that the circuit court did not err in finding that Jennifer's ch. 55 placement and services were inadequate to meet her treatment needs, and concludes that the County has met the standard for dangerousness under § 51.20(1)(a)2.c. Thus, this court affirms the circuit court's orders.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.